SCHATTILLY v. YONKER.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Issues of fact were raised by evidence presented as to plaintiff car wash employee's freedom from contributory negligence and negligence of defendant owner and passenger for injuries sustained by plaintiff as defendants were leaving car when it was presented for wash.

2. TRIAL—REQUEST TO CHARGE—INSTRUCTION.

It is not error for a trial court to decline to give plaintiff's requested instructions in their exact wording, so long as in his own words he set forth the plaintiff's theory of the case insofar as supported by testimony, and instructed the jury on the law applicable thereto.

3. SAME—INSTRUCTION—THEORY OF CASE—EVIDENCE.

Each party to an action is entitled to have the jury instructed with reference to his theory of the case, where such theory is supported by competent evidence and the instruction is properly requested, and this although such theory may be controverted by evidence of the opposing party.

4. AUTOMOBILES — CAR WASH — THEORY OF CASE — REQUESTS TO CHARGE.

It was reversible error for trial court to ignore plaintiff's requests to charge upon the question of whether or not a defendant stepped on the accelerator of the car while the motor was running and the car in gear, where it appears that as such defend-

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur, Negligence § 344 *et seq.*
[2] 53 Am Jur, Trial § 529.
[3, 4] 38 Am Jur, Negligence § 369.
[3] 53 Am Jur, Trial § 512.
[5] 3 Am Jur, Appeal and Error § 1096 *et seq.*
[6] 38 Am Jur, Negligence § 29 *et seq.*
[7] 38 Am Jur, Negligence § 2.
[8] 38 Am Jur, Negligence §§ 366, 368.
[10] 41 Am Jur, Pleadings § 288 *et seq.*

ant was leaving the car it unexpectedly leaped forward and pinned plaintiff, a car wash employee, against a steel beam and fractured his leg.

5. SAME—CAR WASH—INSTRUCTIONS—CONTROL OF CAR.

In action by car wash employee against owner and passenger of car presented for a wash, an instruction that involved the taking over control of the car by the car wash employees *held*, reversible error, where no such control was exercised until after the accident in which plaintiff was injured.

6. SAME—CAR WASH—INSTRUCTIONS TO PATRONS AS TO CONTROL OF CAR.

The instructions, or lack of them, given to a patron of a car wash· with reference to control of a car upon entering the premises should be weighed as part of the circumstances of a case involving injury to a car wash employee and should be considered by the jury in determining whether or not defendant patrons' actions were those which could be expected from reasonably prudent persons under similar circumstances.

7. NEGLIGENCE—DISTINCTION BETWEEN "MERE" AND "ACTIONABLE" NEGLIGENCE—INSTRUCTIONS.

A requested instruction. as to a claimed distinction between "mere" and "actionable" negligence should have been refused, where proper definitions had previously been given as to negligence and proximate cause before reaching such request to charge, as no such distinction exists in the law of this State and such attempted distinctions are more likely to confuse than to clarify.

8. AUTOMOBILES—INSTRUCTIONS—NEGLIGENCE—PROXIMATE CAUSE.

It was error for trial court to instruct jury that in order to find defendants guilty of negligence in action by car wash employee, their negligence must have been "the" as distinguished from "a" proximate cause.

9. SAME—STATUTES—INSTRUCTION.

Giving defendants' request to charge in car wash employee's action for injuries sustained because of alleged negligence of patrons, which included "and if such is the case there would be no recovery against these defendants and plaintiff would have to find his recovery elsewhere" ought not to have been given in view of provisions of workmen's compensation act (CL 1948, § 412.15; § 413.15, as amended by PA 1952, No 155).

10. NEW TRIAL—AMENDMENT OF DECLARATION—DISCRETION OF COURT —BACK INJURY.

The discretion vested in the trial court may not have been

abused in denying plaintiff the right to amend his declaration during trial to show that his injuries included compression fracture of one of the vertebrae in addition to serious fracture of his left leg when he was pinned against a steel beam by defendants' car at car wash where latter came for service and plaintiff was employed, but where case is sent back for new trial, plaintiff is permitted to make proper amendment of pleadings prior to trial so that defendants will not be caught by surprise or without proper opportunity for medical examination of plaintiff as to such material claim of injury (CL 1948, § 616.1; Court Rule No 25 [1945]).

Appeal from Bay; Louis (David R.), J. Submitted October 4, 1957. (Docket No. 37, Calendar No. 46,650.) Decided February 28, 1957.

Case by Carl Schattilly, a minor, by next friend, Pearl M. Schattilly, against Catherine Yonker and Ella Yonker for personal injuries sustained by reason of improper handling of automobile in car-washing establishment. Verdict and judgment for defendants. Plaintiff appeals. Reversed and remanded.

*van Benschoten & van Benschoten,* for plaintiff.

*Heilman & Purcell,* for defendants.

EDWARDS, J. Herein a victim of the new age of automation seeks recovery from 2 women whom he charges with negligent employment of one of its wonders.

A 17-year-old boy, through his mother, brought suit in Bay county against the driver and passenger of an automobile which struck and injured him. The defendants were a married woman and her mother-in-law, who had driven an automatic shift car into the entrance of an automatic washrack where plaintiff was employed at washing cars. The younger woman brought the car to a stop, and got out of it. As the older woman was seeking to get out, the car unexpectedly leaped forward pinning plaintiff

against a steel beam, inflicting serious fractures of his left leg.

On trial, the jury in this case brought in a verdict of no cause for action in favor of both defendants.

Plaintiff's appeal is based primarily upon his claim that the trial judge committed prejudicial error in his charge to the jury.

The circumstances which produced this litigation included the following:

On March 15, 1952, Carl Schattilly (whom we will refer to as plaintiff, although the suit was brought by his mother) was working at Minit Deluxe Car Wash in Bay City, Michigan. At about 2:30 p.m. defendants, who had been waiting in line, pulled up to the entrance of the washrack in a 1951 Ford equipped with "Fordomatic" drive, *i.e.,* an automatic transmission which does not require a clutch in order to move the car from a stop to high-speed operation. A gear-selection indicator was mounted atop the steering post and contained the following designations, from left to right: "P" (park), "R" (reverse), "N" (neutral), "D" (drive), and "L" (low).

As defendants stopped, some of the car-wash crew had already begun cleaning the tires with hoses. One Gene Bennett, who was stationed at this point for the purpose of sweeping the driver's side of the front- and back-seat floors, opened the driver's door. Defendant Catherine Yonker alighted and stepped a few steps away from the car. She testified she had left the car shift lever in the "park" position.

Defendant Ella Yonker, Catherine's mother-in-law, then 67 years of age and wearing a heavy coat and weighing about 175 pounds, was riding in the passenger side of the front seat. She testified that she wanted to get out on her own side, but that Gene Bennett, who was holding the door, motioned to her to get out on the driver's side, telling her to hurry up. Bennett denied any such motions or instructions.

An apparent reason for not getting out on the right-hand side was that the men were already playing the hoses on that side of the car.

Plaintiff was standing in front of the right fender of the car, about to wash it. As Ella Yonker was pulling herself under the steering wheel the car lurched forward and to the right, pinning plaintiff to an I-beam and injuring him. Ella Yonker was uncertain as to what she had grabbed for assistance in getting across the seat, but Gene Bennett testified that it was the steering wheel and definitely not the gear shift. There was no direct testimony as to whether Ella Yonker's coat caught the shift handle. There was no dispute at trial but that at the time the car lurched forward and struck plaintiff, Ella Yonker was the sole person in the automobile.

An expert witness testified that a 1951 Ford with "Fordomatic" drive could not move with the gear shift in "park." He also testified that when in gear the car could "creep," but that the slightest incline, a stone or pebble, or even a pencil placed in front of a wheel would stop the car's motion—unless somebody pushed on the accelerator, in which instance it would move forward.

There were no signs in the car wash directing either drivers or passengers to do or not to do anything. Catherine Yonker testified that she knew she should get out of her car because she saw others in front of her doing so. There was testimony concerning a great deal of noise and hurry in the operation of the washrack.

The trial judge properly considered, on the basis of the testimony referred to above, that issues of fact had been raised pertaining to the alleged negligence of the defendants, whether or not such negligence, if any, was the proximate cause of plaintiff's injury, and the question of plaintiff's freedom from contributory negligence.

Prior to instructing the jury the trial judge was confronted by written requests for detailed instructions from both plaintiff and defendants. On review by this Court, it appears that much of plaintiff's requests to charge consisted of a review of the testimony, phrased in a fashion distinctly favorable to the plaintiff. There could be no error in the trial judge declining to accept plaintiff's requested instructions, in their exact wording, so long as in his own words he set forth plaintiff's theory of the case (in the event there was testimony to support it) and instructed the jury on the law applicable thereto.

In this regard plaintiff requested the following instruction:

"Carl Schattilly claims that the negligence of Catherine Yonker lies in the following facts which he claims to be true:

"1. That Catherine Yonker drove the car into the Minit Wash where she stopped it and got out, knowingly leaving the engine running.

"2. That because of the noise, no one else could detect that the engine was running, including her passenger, Ella Yonker.

"3. That she did not set the emergency brake on the car before leaving it.

"4. That she left the car in a 'drive' position so that anyone touching the accelerator would propel the car forward.

"5. That she knew her mother-in-law knew nothing about the operation of a car.

"6. That she watched her mother-in-law slide across from the passenger side of the car to the driver's side of the car in an attempt to get out on the driver's side while the car was left in this condition which was unknown to the mother-in-law.

"7. That she did not warn the mother-in-law, under the circumstances, to keep away from the operating mechanisms of the car.

"Carl Schattilly further claims that Ella Yonker also was a contributing cause of this accident in that she carelessly and negligently stepped on the accelerator of the automobile in attempting to get out of the car on the passenger side, although she did not ascertain whether or not the car was running or was in gear."

The trial judge declined to make use of the above, or any paraphrase thereof. From the pleadings and the record and plaintiff's requests to charge, it is apparent that plaintiff's theory of the happening of this accident was that the defendant Ella Yonker stepped on the accelerator pedal as she was undertaking to get out of this automobile via the driver's door, and that this action, coupled with the fact that the car was in gear and the brake not set, constituted negligence which was the proximate cause of plaintiff's injuries.

There is ample evidence in this record from which the jury could have found facts to sustain plaintiff's theory.

American Jurisprudence, on the point in question, says:

"Each party to an action is entitled to have the jury instructed with reference to his theory of the case, where such theory is supported by competent evidence and the instruction is properly requested, and this although such theory may be controverted by evidence of the opposing party." 53 Am Jur, Trial, § 626, p 487.

See, also, 38 Am Jur, Negligence, § 369, p 1086; *Webber v. Park Auto Transportation Co.*, 138 Wash 325 (244 P 718, 47 ALR 590).

No doubt the omission was inadvertent, but at no point in this lengthy charge is plaintiff's basic theory ever referred to. We believe it was reversible error for the trial court to ignore plaintiff's requests to

charge upon the question of whether or not one of the defendants stepped on the accelerator while the automobile in question was running and in gear. *Sword* v. *Keith,* 31 Mich 247; *Poole* v. *Consolidated Street R. Co.,* 100 Mich 379 (25 LRA 744, 4 Am Neg Cas 169); *Harnau* v. *Haight,* 189 Mich 600 (13 NCCA 566). See, also, CL 1948, § 618.58 (Stat Ann § 27.1038); Court Rule No 37, § 9 (1945).

. Altogether, the trial judge gave 2 paragraphs of plaintiff's request to charge. He then turned to defendants' requests to charge and gave 9 pages of them almost verbatim out of 9–3/4 pages submitted. No suggestion is intended that error necessarily follows any such arithmetic contrast; but in this instance, as will appear, we consider the parties' requests to have been at least equally self-serving.

Much of defendants' requested instructions, as given by the court, pertained to a review of defendants' theory that this accident resulted from the negligence of the Minit Deluxe Car Wash either in controlling or failing to control the operation of the vehicle in which defendants entered the premises. These instructions contained in paragraphs 52, 54, 65 and 66 of the charge are as follows:

"52. In this respect I charge you that the defendants had a right to assume in the first instance that they would be so directed that no harm or injury would result to anyone until they or either of them should have known to the contrary. And I further charge you that if defendants were under the directions of the employees of the Minit Car Wash after they entered the building, they had a right to rely on these directions insofar as they appeared reasonable and proper under the circumstances then existing, and until such time as a reasonably prudent person would have deemed the directions unreasonable."

"54. Now, I further charge you that the Minit Car Wash, so to speak, undertook to perform a service

for the defendant driver, and it was its duty to use reasonable care and skill in the performance of said service, including any directions or control which it had over the car or driver upon entering the premises, and defendants would not be guilty of negligence if the employees of said car wash failed to perform their duties and defendants acted as reasonable and prudent persons under the circumstances. It is for you to say what the duties of the attendants and the car wash would be under the law and what they would not be."

"65. I charge you as a matter of law the defendants came into the Minit Car Wash to have their car washed, or, rather, the car of the defendant Catherine Yonker. It is conceded that there were no signs which instructed the parties what to do, and it is further admitted that the attendants gave what instructions were to be given.

"66. If you find that no instructions were given to Catherine Yonker as to what she should do when she entered this car wash establishment, and if you further find that one of the employees invited her to leave the car without giving any instructions or making inquiry as to how the car was being left, and if you further find that when the driver of the car had left under those circumstances that the Minit Car Wash had taken control of the car, then any negligence which may have followed was the negligence of the car wash establishment, and these defendants would have no liability."

A careful review of these 4 paragraphs in relation to the circumstances of this case convinces this Court that they are replete with error. For purposes of brevity, we will comment upon only the last of these.

There is no evidence in this record that any agent of the Minit Car Wash ever entered this automobile until after the accident and the injuries complained of had happened. It is undisputed that defendant

Ella Yonker was the only person in the car. We do not believe that there were facts in evidence from which the jury could have concluded that the agent or agents of the Minit Car Wash had taken such "control" of this car as to relieve the defendants, as a matter of law, from the allegations of negligence here directed against them by the plaintiff.

We believe further that the most that the trial court should have given in answer to defendants' request to charge as outlined above was an instruction generally, to the effect that the instructions or lack of instructions furnished to defendants by the Minit Car Wash could and should be weighed as part of the circumstances of this case which confronted defendants at the time and place of the accident; and that these instructions or lack thereof could and should be considered in the jury's determining whether or not defendants' actions were those which could be expected from reasonably prudent persons under similar circumstances.

Although what we have said above disposes of this case and requires reversal for purposes of a new trial, we believe that 4 other instructions complained of warrant comment. Among defendants' requests to charge given by the court was a lengthy discussion of the difference between "mere" negligence and "actionable" negligence. We believe that no such distinction exists in Michigan law, and that the attempted distinctions were more likely to confuse than to clarify. *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99; *Finkler* v. *Zimmer,* 258 Mich 336; *Grabowski* v. *Seyler,* 261 Mich 473; *Wieczorek* v. *Merskin,* 308 Mich 145. The trial judge had properly defined negligence and proximate cause before he reached defendants' request to charge. The requested instruction pertaining to a claimed distinction between "mere" and "actionable" negligence, referred to above, should have been refused.

At several points in defendants' request to charge as ultimately given by the court, the trial court also adopted defendants' formulation that, in order for defendants to be found liable, their negligence must be found by the jury to be "the proximate cause" of the accident. The proper language, previously used by the trial judge in his own general charge to the jury, was of course "a" proximate cause. Under the total charge, such error as is mentioned here was probably not prejudicial but it serves to illustrate further the hazard of wholesale adoption of a self-serving request from a litigant.

We likewise feel that the trial judge should have refused the portion of defendants' request to charge italicized below contained in paragraph 41, the last sentence of which read:

"And if such is the case there would be no recovery against these defendants *and plaintiff would have to find his recovery elsewhere* (Italics ours)."

This language appears to instruct the jury that plaintiff had another remedy which, in fact, may well not have been so, as a result of the provisions of the workmen's compensation statute (CL 1948, § 413.15 [Stat Ann 1950 Rev § 17.189] ) in force at the time of the injury.

See, also, amendment, PA 1952, No 155 (CLS 1954, § 413.15 [Stat Ann 1955 Cum Supp § 17.189] ); CL 1948, § 412.15 (Stat Ann 1950 Rev § 17.165); *Rookledge* v. *Garwood,* 340 Mich 444.

Finally, we have noted plaintiff's contention that the trial court erred in refusing to allow proof of the compression fracture of one of the vertebrae, or to allow amendment of the pleadings in accordance with the evidence proffered at trial in this regard. This issue was first raised at the time of the plaintiff's opening statement. Such a claim of damage represents a material aspect of plaintiff's injuries.

It should not catch defendants by surprise or without proper opportunity for medical examination of plaintiff with this particular claim in mind. We cannot say under the circumstances presented by this record that the trial judge abused the discretion vested in him in his decision on this issue. Court Rule No 25 (1945); CL 1948, § 616.1 (Stat Ann § 27.838); *Randall* v. *Douglass,* 321 Mich 492; *Jackson City Bank & Trust Co.* v. *Blair,* 333 Mich 399 (32 ALR2d 920). Since the case is being sent back on other grounds for a new trial, a proper amendment can be made to the pleadings prior to the new trial.

For the reasons assigned above, the judgment of the court below is reversed and the case is remanded for a new trial. Costs to abide the ultimate result.

DETHMERS, C. J., and SHARPE, SMITH, KELLY, CARR, and BLACK, JJ., concurred.

VOELKER, J., took no part in the decision of this case.