McMIDDLETON v OTIS ELEVATOR COMPANY

Docket No. 74180. Submitted October 10, 1984, at Detroit.—Decided
December 4, 1984. Leave to appeal applied for.

Jane McMiddleton, for herself and as next friend of her five
children, brought an action in the Wayne Circuit Court against
defendant, Otis Elevator Company, seeking damages for inju-
ries sustained by Jane McMiddleton during the course of her
employment with Great Lakes Steel Corporation. Great Lakes
Steel Corporation was added as an intervening plaintiff. The
jury found defendant negligent and awarded damages. The jury
further found that Jane McMiddleton was 25% negligent, thus
reducing the total award to the net sum of $225,000. The trial
court, Michael J. Connor, J., entered an order accordingly.
Defendant appeals therefrom. *Held:*

1. The trial court clearly erred and abused its discretion in
its rulings on the admission of the photographic evidence. The
movies and photographs sought to be admitted were offered

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 8] 29 Am Jur 2d, Evidence §§ 249, 251 *et seq.*
[2, 6, 7, 9] 29 Am Jur 2d, Evidence §§ 785, 786, 790.
    Authentication or verification of photographs as basis for introduc-
    tion in evidence. 9 ALR2d 899.
[3, 6] 29 Am Jur 2d, Evidence § 253.
[4] 29 Am Jur 2d, Evidence §§ 252, 254.
[5, 7] 30 Am Jur 2d, Evidence § 1082.
    81 Am Jur 2d, Witnesses § 518.
[6] 5 Am Jur 2d, Appeal and Error § 603.
[8] 29 Am Jur 2d, Evidence § 1.
[9] 29 Am Jur 2d, Evidence § 801.
    Use of motion pictures as evidence. 62 ALR2d 686.
[10] 75 Am Jur 2d, Trial § 610.
    Construction of statutes or rules making mandatory the use of
    pattern or uniform approved jury instructions. 49 ALR3d 128.
[11] 75 Am Jur 2d, Trial § 589.
[12] 57 Am Jur 2d, Negligence § 37.
[13, 15] 22 Am Jur 2d, Damages § 206.
    Admissibility of evidence that injured plaintiff received benefits
    from a collateral source, on issue of malingering or motivation to
    extend period of disability. 47 ALR3d 234.
[14, 15] 22 Am Jur 2d, Damages §§ 209, 330.

primarily for purposes of contradiction, were relevant to the central issue of plaintiffs' damages and were not unfairly prejudicial. The evidence was admissible as part of defendant's case in chief, and the trial court's ruling that it was inadmissible in evidence constituted reversible error.

2. The trial court's reliance on MRE 613 in finding that a proper foundation had not been made for the admission of the photographic evidence was not appropriate. The photographic evidence was not a prior statement and was not intended to stand as a statement, therefore, the court's reliance on MRE 613, which applies to prior statements of witnesses, was inappropriate.

3. The fact of whether Jane McMiddleton is able to walk without a cane is directly probative on the issue of the extent of her disability and is not a collateral matter. Therefore, the trial court's ruling that the photographic evidence was inadmissible for impeachment was in error.

4. The trial court did not err in its instructions to the jury.

5. A rather extensive foundation consisting of other evidence of malingering on the plaintiff's part is required where evidence of the plaintiff's receipt of workers' compensation benefits is offered to show lack of incentive to return to work. Here, the trial court's ruling that the information concerning workers' compensation benefits was inadmissible because the defendant had not made a sufficient showing to raise the issue of lack of incentive to return to work was a proper exercise of discretion.

Affirmed in part, reversed in part and remanded.

1. Evidence — Relevant Evidence — Rules of Evidence.

Evidence must be relevant, as defined in the Rules of Evidence, to be admissible as part of a defendant's case in chief; evidence is relevant if it has a legitimate tendency to establish or disprove a material fact (MRE 401).

2. Evidence — Negligence — Photographs.

Photographs may be admitted in an action for damages for injuries sustained by a party to show the extent of injuries and the amount of suffering by the party.

3. Evidence — Exclusion of Evidence.

Relevant evidence may be excluded in a trial where its prejudicial impact outweighs its probative value.

4. Evidence — Counter Proof — Prejudice — Collateral Matters.

The offering of counter proof by a defendant is not the presenting

of evidence unfairly prejudicial to the plaintiff; unfair prejudice relates to collateral matters.

5. EVIDENCE — CONTRADICTORY EVIDENCE — IMPEACHMENT EVIDENCE.

Contradictory evidence is simply evidence which is contrary to a witness' testimony; impeachment evidence is a direct attack on a witness' credibility; contradictory evidence is not subject to the same restrictions as impeachment evidence.

6. EVIDENCE — PHOTOGRAPHS — APPEAL.

A trial court's ruling that certain photographic evidence was inadmissible in evidence as part of the defendant's case in chief may be found to have been erroneous where the evidence was offered primarily for purposes of contradiction, was relevant to the central issue of the plaintiff's damages and was not unfairly prejudicial.

7. EVIDENCE — PRIOR STATEMENTS OF WITNESSES — PHOTOGRAPHS — RULES OF EVIDENCE.

The rule of evidence concerning prior statements of witnesses does not apply to photographic evidence which is not a prior statement or which is not intended to stand as a statement (MRE 613).

8. EVIDENCE — ADMISSION OF EVIDENCE.

The fact that evidence sought to be admitted by the defendant in a trial may not be strong evidence for the defense is immaterial on the question of its admissibility.

9. EVIDENCE — PHOTOGRAPHS.

The reception of motion pictures and photographs in evidence should be left largely to the discretion of the trial court.

10. TRIAL — STANDARD JURY INSTRUCTIONS — ADDITIONAL INSTRUCTIONS — COURT RULES.

Standard Jury Instructions are to be used whenever they are applicable, accurate and requested by a party; the court may give additional instructions on applicable law not covered by the standard instructions; the additional instructions shall be modeled as nearly as practicable after the style of the standard instructions, making them concise, understandable, conversational, unslanted and non-argumentative (GCR 1963, 516.6[2], [4]).

11. TRIAL — JURY INSTRUCTIONS.

A trial court's failure to give a requested jury instruction that correctly states the applicable law is error.

12. Nᴇɢʟɪɢᴇɴᴄᴇ — Lɪᴀʙɪʟɪᴛʏ ᴛᴏ Tʜɪʀᴅ Pᴇʀꜱᴏɴꜱ.

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

13. Dᴀᴍᴀɢᴇꜱ — Cᴏʟʟᴀᴛᴇʀᴀʟ Sᴏᴜʀᴄᴇ Rᴜʟᴇ.

The collateral source rule provides that compensation to an injured person from a source other than another tortfeasor does not operate to lessen damages recoverable from the wrongdoer.

14. Eᴠɪᴅᴇɴᴄᴇ — Nᴇɢʟɪɢᴇɴᴄᴇ — Dᴀᴍᴀɢᴇꜱ — Mɪᴛɪɢᴀᴛɪᴏɴ ᴏꜰ Dᴀᴍᴀɢᴇꜱ — Wᴏʀᴋᴇʀꜱ' Cᴏᴍᴘᴇɴꜱᴀᴛɪᴏɴ Bᴇɴᴇꜰɪᴛꜱ.

Evidence of the receipt of workers' compensation benefits, offered in mitigation of damages, has been held inadmissible, whether offered by a plaintiff or a defendant; however, such evidence is not automatically inadmissible when offered for other purposes.

15. Eᴠɪᴅᴇɴᴄᴇ — Nᴇɢʟɪɢᴇɴᴄᴇ — Wᴏʀᴋᴇʀꜱ' Cᴏᴍᴘᴇɴꜱᴀᴛɪᴏɴ Bᴇɴᴇꜰɪᴛꜱ — Iɴᴄᴇɴᴛɪᴠᴇ ᴛᴏ Rᴇᴛᴜʀɴ ᴛᴏ Wᴏʀᴋ.

Evidence of the receipt of workers' compensation benefits may, in a proper case, be admissible for the purpose of showing that the plaintiff had little incentive to return to work; however, a rather extensive foundation consisting of other evidence of malingering on the plaintiff's part is required to be established; rulings on the admissibility of such evidence lie within the discretion of the trial judge.

*Barton W. Morris,* for plaintiffs.

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Ronald A. Weglarz),* for the intervening plaintiff.

*Fletcher, Cardelli & Tice, P.C.* (by *Thomas G. Cardelli* and *Michael K. McNally),* for defendant on appeal.

Before: Hood, P.J., and Beasley and P. J. Ma-
rutiak,* JJ.

Per Curiam. Defendant, Otis Elevator Company,
appeals from a jury verdict rendered in favor of
plaintiffs, under which plaintiffs were awarded a
net sum of $225,000. The jury found defendant,
Otis Elevator Company, negligent and awarded
damages in the sum of $275,000 to plaintiff Jane
McMiddleton, and $5,000 for each of her five chil-
dren. The jury further found that Jane McMiddle-
ton was 25% negligent, thus reducing the total
award to the net sum of $225,000.

On appeal, defendant raises three issues. First,
defendant claims that the trial judge abused his
discretion in refusing to admit into evidence cer-
tain photographic evidence obtained by defendant.
During trial, the extent of plaintiff's injuries was
in dispute. Plaintiff claimed that she needed a
cane to walk and used it all the time. During trial,
defendant hired a private detective to take surveil-
lance movies of plaintiff, showing her walking
without a cane. The movies were shown on a
separate record, after which the trial judge found
that the movies were not admissible for impeach-
ment because they involved a collateral matter,
and also that defendant had not established a
proper foundation for their admission. He made a
similar ruling regarding photographs of the plain-
tiff walking without a cane. After viewing the
movie, the trial judge stated that it did appear
that on one occasion the plaintiff was walking
normally without limping.

The trial court's ruling that the photographic
evidence was inadmissible had three possible
bases: (1) its probative value was outweighed by its
prejudicial effect; (2) it was inadmissible for im-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

peachment because the defense had failed to lay a proper foundation; and (3) it was inadmissible for impeachment because it concerned a collateral matter.

A threshold question regarding this issue is whether the evidence was properly admissible as part of defendant's case in chief. To be thus admissible, evidence must be relevant under MRE 401. Evidence is relevant if it has a legitimate tendency to establish or disprove a material fact.[1] To be admissible, photographs must be accurate, have probative value and must be helpful in throwing light upon some material point in issue.[2] Photographs may be admitted to show the extent of injuries and the amount of suffering of a party. In the within case, the evidence was offered to show that plaintiff's disability was not as extensive as she claimed.[3] Thus, the movies and photographs were clearly relevant on the issue of damages.

In 12 Blashfield, Automobile Law & Practice (3d ed), § 435.5, p 35, the text states:

"Films which show that a plaintiff is capable of physical activity may be displayed where the plaintiff has produced proof of disability."

In McCormick, Evidence (3d ed), § 214, p 674, the author states:

"Judicial discretion in the admission or exclusion of motion pictures is constantly emphasized in the decisions, and is perhaps largely attributable to the fact that the presentation of this kind of evidence will involve considerable expenditure of time and inconvenience. At the same time, however, when motion pic-

---

[1] *Grubaugh v City of St Johns,* 82 Mich App 282; 266 NW2d 791 (1978), *lv den* 404 Mich 804 (1978).

[2] *Anderson v Lippes,* 18 Mich App 281, 288; 170 NW2d 908 (1969).

[3] See 3 Wigmore, Evidence (Chadbourn Rev), § 798a, p 260.

tures are offered which reproduce the actual facts or original events in controversy, such as films of an allegedly incapacitated plaintiff shoveling snow or playing baseball, * * * the cogency of the evidence is such that the taking of considerable time and trouble to view the evidence would appear amply warranted." (Footnotes omitted.)

In *Rogers v Detroit,*[4] plaintiff sued to recover damages for injuries received when alighting from a streetcar. Her condition was such that counsel agreed that it would be dangerous to bring her to the courtroom. Instead, the trial judge permitted the jury to view motion pictures taken of plaintiff in her home, which showed her condition, a rapid pulsation of the throat. After investigating the circumstances under which the movies were made and viewing them apart from the jury, the judge admitted the movies into evidence. On appeal, the Supreme Court found no error, stating:

"No claim is made that they were not an accurate portrayal of Mrs. Rogers' condition, or that the proper foundation was not laid for their introduction. See 'Motion Pictures in Evidence,' 27 Ill L Rev 424. Certain circumstances under which motion pictures might convey an erroneous impression to a jury are pointed out in 2 Wigmore Evidence (2d ed), p 107. The reception of such evidence should be left largely to the judgment and discretion of the trial judge. *Heiman v Railway Co,* 21 Cal App 2d 311; 69 Pac 2d 178 (1937); *State, for the use of Chima v United Railways & Electric Co,* 162 Md 404; 159 A 916; 83 ALR 1307 (1932), and *Denison v Railway Co,* 135 Neb 307; 280 NW 905 (1938)."[5]

In other jurisdictions, various cases support the admissibility of surveillance movies in personal

---

[4] 289 Mich 86; 286 NW 167 (1939).

[5] *Id.,* p 90; see also, *Green v General Motors Corp,* 104 Mich App 447, 451-452; 304 NW2d 600 (1981).

injury actions.[6] Relevant evidence may, neverthe-
less, be excluded if its prejudicial impact out-
weighs its probative value. In part, the trial
court's ruling was on this ground.

In the within case, plaintiff stated that she
walks with a limp and uses a cane. Defendant
countered by offering proof that her movement is
less impaired than she claims. The offering of
counter proof is not presenting evidence unfairly
prejudicial to the plaintiff. Rather, unfair preju-
dice relates to collateral matters. In the instant
case, the trial judge appeared to base his finding of
prejudice on the fact that the movie tended to
contradict plaintiff's sworn testimony. This was
error. Defendant was entitled to offer evidence
regarding plaintiff's claimed injuries. The trial
judge also stated that the movie "does only go at
best to impeachment". His primary bases for deny-
ing admission, improper foundation and collateral
issue, were based on this assessment. It is in this
judgment that we find error.

In holding that the photographic evidence could
only be offered for purposes of impeachment, the
trial court may have confused two concepts: con-
tradiction and impeachment. Contradictory evi-
dence is simply evidence which is contrary to a
witness' testimony. Impeachment evidence is a
direct attack on a witness' credibility. Although
there is considerable overlap, contradictory evi-
dence is not subject to the same restrictions as
impeachment evidence.[7] The photographic evi-
dence in this case was offered primarily for pur-

[6] *Mathias v Baltimore & O R Co,* 93 Ill App 2d 258; 236 NE2d 331
(1968); *Hayward v Ginn,* 306 P2d 320 (Okla, 1957); *Barham v Nowell,*
243 Miss 441; 138 S2d 493 (1962). See also 29 Am Jur 2d, Evidence,
§ 801, pp 883-886; 62 ALR2d 686, § 6, pp 698-701.

[7] *Ferguson v Gonyaw,* 64 Mich App 685, 692; 236 NW2d 543 (1975),
*lv den* 396 Mich 817 (1976); *Osborn v League Life Ins Co,* 20 Mich
App 19, 21; 173 NW2d 724 (1969).

poses of contradiction, was relevant to the central issue of plaintiffs' damages and was not unfairly prejudicial. Therefore, we believe that it was admissible as part of defendant's case in chief, and that the trial judge's ruling that it was inadmissible in evidence constituted reversible error.[8]

Even assuming that the photographs and movie were admissible only for impeachment, we would doubt the correctness of the trial judge's ruling. He found that a proper foundation had not been made for the film's admission, in that plaintiff had not been asked whether, at certain specific times and locations, she used her cane. He relied on MRE 613, which applies to prior statements of witnesses. Since the photographic evidence in this case was not a prior statement and not intended to stand as a statement, we do not believe that the trial court's use of MRE 613 was appropriate.

The trial judge also found that the issue (as he stated it) of whether plaintiff always used a cane was a collateral matter and, thus, could not be disputed by way of impeachment. He relied upon *Cook v Rontal,*[9] in which a plaintiff in a malpractice action sought to introduce the testimony of another patient of the defendant-doctor. The issue was whether the doctor had given the plaintiff the proper warnings, and the former patient would have testified that the doctor did not properly warn her. The *Cook* Court upheld the trial court's ruling that the other patient's testimony related to a collateral matter and was inadmissible. Facts which would have been independently provable regardless of the contradiction are not collateral.[10]

---

[8] *Jarecki v Ford Motor Co,* 65 Mich App 78; 237 NW2d 191 (1975).

[9] 109 Mich App 220; 311 NW2d 333 (1981), *lv den* 415 Mich 854 (1982).

[10] McCormick, Evidence (3d ed), § 47, p 110; *Shannon v Jamestown Twp,* 251 Mich 597, 600; 232 NW 371 (1930).

The fact of whether plaintiff is able to walk without a cane is directly probative on the issue of the extent of plaintiff's disability and is not a collateral matter. Therefore, the trial judge's ruling that the evidence was inadmissible for impeachment was in error.

The trial court appeared to be concerned about the fact that the surveillance revealed plaintiff without her cane on only one occasion, out of six trips in and out of her car. There was, however, no indication that the defense intended to show only that portion of the film that showed plaintiff without her cane. That the film may, in fact, not be strong evidence for the defense is immaterial on the question of its admissibility. This was a jury trial. The extent of plaintiff's injuries and her impaired condition were questions of fact for the jury.[11] In light of the foregoing, we believe that the trial judge clearly erred and abused his discretion in his rulings on the photographic evidence.

In so doing, we do not intend to unduly limit the exercise by the trial judge of his discretion in weighing the admission of photographic evidence. As stated in *Rogers, supra,* the Supreme Court emphasized that the reception of this type of evidence should be left largely to the discretion of the trial court. However, in the instant case, for the reasons discussed above, we find reversible error.

Second, defendant claims that the trial judge committed reversible error in his instructions to the jury. The trial court gave, *inter alia,* the following instruction:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third

[11] *Clingerman v Bruce,* 11 Mich App 3, 10; 160 NW2d 614 (1968); *Woiknoris v Woirol,* 70 Mich App 237, 240; 245 NW2d 579 (1976).

person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

This instruction is a recitation of 2 Restatement Torts, 2d, § 324A, p 142.

In *Javis v Ypsilanti School Dist,*[12] the Supreme Court held that GCR 1963, 516.6(2) requires that the Standard Jury Instructions be used whenever they are applicable, accurate and requested by a party. In *Javis,* the trial judge substituted his own instruction for the applicable SJI. *Javis* did not deal with a case such as the one at bar in which the court gave an additional instruction. That subject is dealt with by GCR 1963, 516.6(4):

"(4) This subrule does not limit the power of the court to give additional instructions on applicable law not covered by SJI. Additional instructions when given shall be modeled as nearly as practicable after the style of SJI, making them concise, understandable, conversational, unslanted and non-argumentative."

A trial court's failure to give a requested instruction that correctly states the applicable law is error.[13] The instruction given in the within case is a correct statement of Michigan law, as that provision of the Restatement has been used in numer-

---

[12] 393 Mich 689; 227 NW2d 543 (1975).

[13] *Kovacs v Chesapeake & O R Co,* 134 Mich App 514; 351 NW2d 581 (1984).

ous Michigan opinions.[14] Defendant argues that the instruction is not applicable to this case. We disagree. The Restatement makes it clear that § 324A deals with an actor's liability to third persons:

"b. This Section applies to any undertaking to render services to another, where the actor's negligent conduct in manner of performance of his undertaking, or his failure to exercise reasonable care to complete it, or to protect the third person when he discontinues it, results in physical harm to the third person or his things. It applies both to undertakings for consideration, and to those which are gratuitous." Restatement Torts, *supra,* comment b, p 143.

Therefore, we conclude that the instruction given here was clearly applicable to this case, where defendant, Otis Elevator Company, undertook to provide elevator maintenance service to intervenor-employer, Great Lakes Steel Corporation, and plaintiff was a third party. Defendant's lengthy argument that the elevator maintenance man was not bound to repair the elevator's electric light simply because he had done so gratuitously in the past, whether true or not, was not relevant to this jury-instruction issue.

Third, defendant claims that the trial judge abused his discretion when he held evidence of plaintiff's receipt of workers' compensation benefits inadmissible. The collateral source rule provides that compensation to an injured person from a source other than another tortfeasor does not operate to lessen damages recoverable from the wrongdoer. Evidence of the receipt of benefits from workers' compensation, offered in mitigation of

[14] See, *e.g. Smith v Allendale Mutual Ins Co,* 410 Mich 685, 711-712, n 19; 303 NW2d 702 (1981).

damages, has been held inadmissible, whether offered by a plaintiff[15] or a defendant.[16]

Offered for other purposes, however, evidence of the receipt of benefits from workers' compensation is not automatically inadmissible. In *Vanden Berg v Grand Rapids Gravel Co,*[17] this Court upheld the trial court's refusal to allow evidence of the payment of benefits when offered to show bias on the part of employees of the plaintiff's former employer. The Court did not base its holding on the collateral source rule, but rather, held that the prejudicial effect of the proffered evidence outweighed its probative value.

In the present case, defendant requested the admission of evidence of plaintiff's receipt of workers' compensation benefits for the purpose of showing that plaintiff had little incentive to return to work. In a proper case, such evidence is admissible for this purpose. *Blacha v Gagnon*[18] discussed extensively the admissibility of evidence of workers' compensation benefits for this purpose, the Court stating:

"This Court does not propose to contravene the collateral source rule in Michigan. Recovery from a third party who is responsible for injuries suffered is not diminished by receipt of wages or salary from the employer for the period of his disability. Evidence introduced in mitigation of damages continues to be inadmissible. However, there are circumstances where evidence may be introduced to show a motive for failure to resume regular employment within a reasonable period

[15] *Hill v Harbor Steel & Supply Corp,* 374 Mich 194, 214; 132 NW2d 54 (1965).

[16] *Lynch v Sign of the Beefeater, Inc,* 407 Mich 866; 283 NW2d 632 (1979).

[17] 42 Mich App 722, 735-736; 202 NW2d 694 (1972), *lv den* 389 Mich 768 (1973).

[18] 47 Mich App 168, 177-178; 209 NW2d 292 (1973).

of time. Sufficient facts must be adduced which raise serious doubts in the minds of the jurors as to the extent of the injury actually suffered. This foundation established, the proposed evidence must refute the fact that plaintiff actually lost the wages or salary claimed. Taken together, should the trial judge in the exercise of his discretion determine that the evidence affects the weight of testimony introduced to show that plaintiff was disabled from working due to the injury, it will be deemed admissible. Further, the trial judge must instruct the jury as to each of the theories of recovery advanced by the opposing parties, clearly advising that if plaintiff's contention is believed, wages or salary from an employer may not serve to mitigate damages."

Thus, under *Blacha,* where evidence of the receipt of workers' compensation benefits is offered to show lack of incentive to return to work, a rather extensive foundation consisting of other evidence of malingering on the plaintiff's part is required.

*Gallaway v Chrysler Corp*[19] was an employment discrimination case in which the defense offered evidence of plaintiff's receipt of social security and workers' compensation benefits to bolster its argument bearing on the reason for the plaintiff's retirement. This Court upheld the trial court's finding of admissibility, stating:

"We do not agree with plaintiff's argument that the judge abused his discretion in this matter, nor can we say that the introduction of plaintiff's social security and workers' compensation files violated the collateral-source doctrine. Where the introduction of evidence concerning collateral benefits has bearing on some purpose other than the question of mitigating damages, it is admissible. *Blacha v Gagnon,* 47 Mich App 168; 209

[19] 105 Mich App 1; 306 NW2d 368 (1981), *lv den* 413 Mich 853 (1982).

NW2d 292 (1973); *Jackson v Sabuco,* 21 Mich App 430; 175 NW2d 532 (1970), *lv den* 383 Mich 784 (1970)."[20]

The *Gallaway* Court did not refer to *Blacha's* requirement of a foundation. The *Blacha* opinion was a much more extensive and reasoned treatment of the issue than *Gallaway.* For this reason, we believe that, in spite of *Gallaway's* rather broad statement of admissibility, the requirement of a foundation emphasized in *Blacha* remains. The plaintiff in *Blacha* participated in bowling and softball and worked every day for a week following his accident. In addition, one doctor testified that there were no objective symptoms of the injury alleged. The Court held that this background was sufficient to raise serious doubts in the jurors' minds and was, therefore, a proper foundation for the admissibility of evidence of the receipt of workers' compensation benefits.

In the within case, there was conflicting evidence as to the extent of plaintiff's injuries. The trial judge considered the conflicting evidence and, under *Blacha,* held that defendant had not made a sufficient showing to raise the issue of lack of incentive and, therefore, ruled that the information concerning workers' compensation benefits was inadmissible.

All cases dealing with this issue emphasize that rulings on admissibility lie within the discretion of the trial judge. It might be noted that in *Blacha, Gallaway* and *Carreras v Honeggers & Co, Inc,*[21] the rulings of the trial courts on this issue were upheld. Here, we believe that the trial judge's ruling was a proper exercise of discretion.

In conclusion, while, as stated, we find no error

---

[20] *Id.,* p 7.

[21] 68 Mich App 716, 724; 244 NW2d 10 (1976).

with regard to the second and third issues raised by defendant, we hold that the trial court erred in ruling defendant's photographic evidence inadmissible. We, therefore, reverse that finding and remand for a new trial on the issue of damages.

Affirmed in part, reversed in part and remanded.